The 4th District Appellate Court of the State of Illinois has reconvened, the Honorable Catherine E. Zienoff presiding. Good morning, counsel. This is case number 424-0721, Stephanie Harris v. Thomas Rossi and the Peoria Surgical Group Ltd. Would counsel please identify themselves for the record? First counsel for the appellant. Thank you, your honor. Nick Drury for the appellant. Thank you. And counsel for the appellee. Laura Aramia on behalf of the appellees. Thank you very much. All right, Mr. Drury, you may begin your argument. May it please the court, counsel. This is a case where the only issue in front of the court is whether the circuit court in this matter appropriately made a determination as to duty in this case. I don't want to rehash all of the things in the briefs. I thought that they were very detailed for the issue that we're here for today. This is a basic issue of law. The court has de novo review over it, and it is the issue of duty is an issue of law to be decided by the court. In this case, we have a two individuals working together. Defendant Rossi, who is a surgeon and my client, Stephanie Harris, who was assisting him in the operating room. Dr. Rossi instructed. Let me stop you there, counsel. I would like to know the relationship of the parties because it's my understanding the nurse was employed by OSF, correct? That is correct. For like 22 years or something like that. And then Dr. Rossi, I presume the surgical group is the group that he works under. What is the relationship between, I guess we can just say defendants and OSF or defendants and the nurse? The defendants have privileges to perform surgeries at OSF. There was no employment relationship between OSF, I'm sorry, between OSF and my client or the defendants. However, Dr. Rossi did admit and stated that he had authority to instruct the nursing staff of which Stephanie was a part of during surgeries in order to assist in patient care. And where did that authority come from? I would assume the hospital. We did not litigate that matter. However, Dr. Rossi has admitted that he did have that authority and Stephanie has admitted that part of her job duties were to follow surgeons instructions in the operating room. You also allege in the complaint that Dr. Rossi was negligent and failing to follow policies and procedures. I wanted to know where are these policies and procedures? I didn't see it in the depositions. I didn't see them attached to the motions for summary judgment because I thought that was a pertinent part to maybe determine where this relationship and these duties came from. The policies and procedures that I alluded to in the complaint deal with the policies and procedures of Peoria Surgical Group, who was Dr. Rossi's employer and of which he was a partner. There were no policies and procedures disclosed to us from Peoria Surgical Group. Were they asked for? They certainly were. And it's my understanding that that goes into part of our allegations that they didn't have appropriate policies and procedures for dealing with co-workers in the surgical suite. And Dr. Rossi testified in his deposition, I believe, that there were no policies and procedures at OSF that directly affected his behavior in the operating room. He basically said it's his authority to use his judgment. But I think that we have gotten sidetracked on the specifics that this is a surgeon in an operating room because the key issue here is that there are just two people, one of whom has authority to direct the other to do something. Dr. Rossi made the instruction. Stephanie was attempting to follow that instruction. And then Dr. Rossi interfered with her bodily movement, causing her injury. I know that a lot of ink has been spilled on defense behalf about the public policy implications of the health care system and whether it would be inefficient for a surgeon to have to wait until one of the nurses performed the duties that she was instructed. And I think that that's absolutely the wrong way of looking at this case. I disagree that that is a productive lens. Well, counsel, I mean, you use the word inefficient, but we're talking here about human lives at stake. We have a patient on the operating table under anesthesia. So seconds count in an operating room. It's not really inefficiency. It's really the magnitude of the, I guess, the importance of seeing that the operation and the procedure is done for the benefit of the patient. Isn't that what the focus needs to be? I don't know. So I mean, the logical extension is that any additional time that's spent waiting for somebody to do something takes away from the focus on the patient and the need for immediate response by one of the operating room team members. I certainly agree with that as a broad proposition. I just don't think that it has any bearing in this case. There's no evidence that there was some sort of emergency or a need for Dr. Rossi to interfere with the movement of these laparoscopic monitors. And Dr. Rossi testified that he doesn't even remember the surgery, doesn't remember this event. This case was previously tried to be positioned by the defense as a medical negligence case. But there's no indication that there was any need for Dr. Rossi to behave in the manner in which he did. He had a couple of options. And as the surgeon who's performing the surgery, it was his obligation to quarterback the team, essentially. He instructed Stephanie to move the monitors and then did not wait for her to do so before he interfered. He could have told her to move the monitors and then wait for her to complete her activity. Or he could have instructed her to stand back and chose to manipulate the monitors himself. Unfortunately, he took both options, which was telling her to do something and then interfering with her activity, causing her injury. And just as a threshold matter, I know I mentioned it in my brief, but I think that the case of Simpkins versus CSX, the Illinois Supreme Court case, gives us the most prescient and important quote in determining this matter. And that is, however, the Supreme Court of Illinois has long recognized that every person owes a duty of ordinary care to all others to guard against injuries, which naturally flow as a reasonably probable, foreseeable consequence of an act. Such a duty does not depend on contract, privity of interest, or the proximity of relationship, but extends to remote and unknown persons. I think that it has been bold to defend this matter on a lack of duty from two individuals that were sharing an operating room, one of whom had authority to instruct the other what to do. I just don't think that that's borne out by the case law and the cases relied upon by defendant, sorry, by the defendants have had to do with bizarre and fantastical situations. CSX, for example, is about the spouse of an employee of the defendant suing for injuries that she sustained as a result of tracked in or brought home asbestos on the employee's clothes, her husband. Those are the types of circumstances in which the court has found that there is no duty appropriate, not in cases that involve person-to-person contact either directly or through the instrumentality of the laparoscopic monitor in this case. Well, in looking at the issue of whether there was a duty here on the part of the physician, the surgeon, do we not look at reasonable foreseeability of the injury occurring? And we look also at in doing that, do we not focus here on do we focus on how the plaintiff was injured? So there wasn't a scalpel being handed, we weren't talking about a scalpel, we're talking about a monitor. Does that inform at all the issue of foreseeability in this case? I do not think so, Your Honor. Because the instrumentality of the monitor is a red herring, I believe. It's just another instrument. But we're not interested on the inherent dangerousness of a monitor, what we should be focused on. Why not? Because it's not a sharp instruments case like a scalpel cutting somebody or something along those lines. I think that the correct lens is to view Dr. Rossi's actions. What was he doing? Why was he doing what he was doing in the manner in which he was doing it? It could have been anything that caused injury to Stephanie. The inherent nature of the monitor, I don't think adds much to the analysis. I'm not aware of any cases cited by the defendant or that I found talking about the inherent dangerousness of any sort of object that's used. It's just an instrument in this case. A car isn't inherently dangerous until someone gets behind the wheel of it and negligently behaves to cause injury to someone else. The instrumentality is the monitor. That's what Dr. Rossi just happened to be grabbing on to after he had instructed Stephanie to reposition those monitors. The monitors themselves are not dangerous. They present a no risk of harm. How then was it reasonably foreseeable for Dr. Rossi to know that that would cause an injury to the nurse? Because there is a general duty of ordinary care. I get that. But there has to be something that is inherently dangerous so the doctor elevates that duty. Do you understand what I'm asking? I certainly do, Your Honor. I believe. My comments are that the monitor itself is not inherently dangerous. I agree with that. However, Dr. Rossi's actions brought him into physical contact through the monitor with Stephanie Harris. She was holding it and as he readjusted it and pulled the monitor back, causing Stephanie's arms to extend backwards, she sustained a rotator cuff tear. Putting someone's body in that type of anatomical position is the dangerous thing. That's the reasonably foreseeable thing. But that's where I have an issue because no one could testify about how the injury occurred. The doctor had no recollection. Stephanie didn't know how her arms were, how it was moved, when it happened. All she testified was that she had her hands, I believe, on these handles. Other than that, she did not know anything and the doctor didn't even recall her. I guess that's where I'm having difficulty with this unreasonable risk of harm that the monitor presented. I don't think that there was an unreasonable risk of harm that the monitor presented. I think that Dr. Rossi owed a duty to use his body in conformity with ordinary care. And the precise circumstance or the instrument that he used in order to cause harm is not something that's unreasonable. But that does not obviate his duty of ordinary care for those around him, especially those over whom he has authority to direct. Did I answer that? I just don't see how that gives rise to an elevated duty. You said ordinary care and I agree. There is a duty of ordinary care, but there needs to be more in order for there to be a duty. And I'm not seeing what that duty is other than ordinary care. Correct. And that's all that my argument is. That's my position is that Dr. Rossi, as a human person dealing with a co-worker who he has authority over, had a duty of ordinary care. Whether he breached that duty, whether causation can be proved, are not even before this court right now. The sole argument that the defense has put forth is that Dr. Rossi had no duty to Stephanie Harris, not a duty of ordinary care, nothing along those lines. And that's why summary judgment was granted by the trial court, which was inappropriate. Because as I've said a couple times, and I think that I heard some agreement, we all have a duty of ordinary care. Dr. Rossi had a duty of ordinary care. If this panel finds that Dr. Rossi had a duty of ordinary care against, I'm sorry, in reference to Stephanie Harris, then the circuit court's granting of summary judgment should be overturned and the case should return to the trial court for trial before finder fact, such as a jury. Counsel, you mentioned that these were, you called them co-workers. So I just want to, this is kind of a, not necessarily a briefed issue, but your client had a workers' compensation settlement in this case. Why does the Workers' Compensation Act not prohibit this action? And are there any cases that you're aware of that say that you can have a suit between co-workers once there's been a workers' compensation settlement? Thank you, Your Honor. So they were co-workers, and I'm using that term, meaning that they were working at the same location. They were not co-employees of the would be inapplicable in this case because they were two employees of two different companies working together. But that does not indicate that they were co-employees or that it's prohibited by workers' compensation. Thank you. And I guess I had another question. Looking at your opening brief and at page seven, you talk about the eggshell plaintiff rule. What relevance does that have with respect to the issue of duty? I mean, that speaks to damages, does it not? I agree. The reason that we included the eggshell plaintiff in the brief was because I believe that the defense has misconstrued what duty is and what duty is not. And I wanted to point out and bring to the court's attention that just because someone is injured in a manner that wasn't necessarily expected, it does not reach the zenith of disallowing duty based on foreseeability. Any movement by another person toward another person should already include a duty of that if you touch them, that you could cause an injury. Now, whether we can prove breach of that duty is a question for the jury, but we're only here on duty. And I just don't see that the foreseeability, I think that the foreseeability arguments by the defense are belied by the existence of the eggshell skull. So are you not following up on some of Justice Grisho's questions? You're talking about the fact that you believe the physician had an ordinary duty of care toward the nurse, but are you not really elevating that duty when you're suggesting that there needs to be, in essence, different behavior in an operating room, or certainly when there's a patient there? These are all trained professionals. I mean, they may be trained somewhat differently, but certainly they've worked together, these two, the nurse and the doctor, many times. But it seems that in this context, you are suggesting that even though the doctor was the one with authority, he couldn't change his mind. So if he had directed the nurse to move the monitor and perhaps, and this may be speculation, she was moving it too slowly, not in the right direction, he needed it immediately to help view the site that he was operating on this patient at. You're suggesting that, well, he couldn't have reached over and taken it himself. He would have had to give a second command to her or a second request. How is that consistent with what needs to happen in an operating room? So, Your Honor, there's no indication and no evidence that there was an emergency or anything that was going wrong in the operating room. But it's still my understanding that there is an ordinary duty of care that we each have towards each other. If there are extenuating circumstances that does not delete the duty of care, however, it informs the jury when they are determining if the doctor proceeded as a reasonable person would under the circumstances. Certainly, if there's some sort of emergency, if they're responding to a crisis, then that's something that the jury can take into consideration when they are determining breach or if compliance with the duty of ordinary care was met. Thank you. I believe your time is up. You'll have time on rebuttal unless, Justice Fancel, do you have any further questions now? Justice Grisho? I have a question. So, we all agree that there's a duty of ordinary care, but would you agree that legal duty involves more than the mere possibility of an occurrence? You know, because you do agree with that. You can't be expected to guard against everything that could possibly occur, correct? Absolutely. But I believe that a person-to-person touching is not, or through an instrument or directly, is not a mere possibility of an injury. You're saying that was foreseeable? The injury that Stephanie sustained under these circumstances, absolutely foreseeable. Thank you. Not just conceivable, but foreseeable. Correct, Your Honor. Okay. Thank you. Anything further at this time? Okay. All right. Attorney Iremia? Thank you, Your Honor. Good morning. May it please the Court. I'm Laura Iremia, and I represent Dr. Thomas Rossi and the Peoria Surgical Group. I wanted to begin by addressing some of the things that were raised by Your Honors in questioning. And first is what the actual duty plaintiff is claiming Dr. Rossi owed during the surgical procedure. Plaintiff's counsel described it as Dr. Rossi having a duty whenever there is any movement towards another person. However, that is an absolute duty that has been rejected by Illinois courts several times. In fact, we cite a case directly on point where a plaintiff made that argument. It's Schmidt versus Fairmont Hotel Company in Chicago. And there, the plaintiff argued that as a invitee onto the hospital's property, the hotel had a duty to exercise ordinary care and make sure that the property was reasonably safe for him to be there. And the court responded by saying that that argument overextends the duty of ordinary care, quote, a duty of care is not absolute. Liability and the rules of ordinary negligence require some knowledge on the part of the defendant, actual or constructive of the possibility of the danger complained of. And here, plaintiff concedes that the monitors in the operating room did not present an unreasonable risk of harm. And the record, which is undisputed, shows that Dr. Rossi and plaintiff had a pre-existing relationship. They had worked on over 40, or excuse me, 50 surgeries together. Plaintiff acknowledged her training, which was to help the surgical team with whatever was needed, including moving equipment or adjusting monitors. She acknowledged that at times surgeons do it, and at times she has done it. Dr. Rossi acknowledged the same thing. And so this is the situation, the experience that both parties are on March 13, 2019. There's no evidence that this type of injury has occurred before. By that, I mean that any sort of injury has occurred as a result of repositioning laparoscopic monitors in the operating room. And so there's nothing in the record from which this court could conclude that Dr. Rossi should have reasonably anticipated that by moving forward and starting to reposition the monitors himself, that he was increasing the risk of harm to the interfering with a plaintiff's bodily movement, causing injury, as well as instructing plaintiff to do something, and then he interfered before she could do so. That is not borne out by the record. Plaintiff, her deposition testimony is the only thing in the record that addresses what actually happened in the operating room, as Dr. Rossi had no memory of the occurrence. And plaintiff testified that Dr. Rossi asked her to move the laparoscopic monitors, that she grabbed each handle, one with each hand, underneath the monitors and moved it. That's page C186 and 190 of the record. Dr. Rossi reached from behind plaintiff and pulled the monitors backward. Her arms went back. Plaintiff immediately let go of the monitor as soon as Dr. Rossi pulled back on it. It's pages C193 and 194. She walked to her computer station, looked back, and Dr. Rossi was still continuing to adjust the monitors. That's it. That's all we know that happened. There's no evidence that plaintiff was in the midst of moving, for example, the monitors, and that Dr. Rossi then came in and stopped that movement. In fact, plaintiff testified she could not recall her positioning. She could not recall if the monitors were above her head, if her arms were extended, or whether they're bent at the elbow. She could not recall how far back Dr. Rossi pulled the monitors. She could not recall if the monitors were over her head, such that her arms were up. Dr. Rossi did not say anything to her that evidenced any sort of animosity or anything like that. There was really nothing out of the ordinary. This is a typical task performed, as acknowledged by both parties, performed by both surgical nurses as well as doctors. That's exactly what happened here. Plaintiff focuses on Dr. Rossi's conduct as evidence of a duty. The fact that because Dr. Rossi acted, there's an injury. Counsel is essentially inferring a duty existed because an Illinois court's consider in determining whether a duty exists was even addressed by plaintiff. In the lower court, plaintiff argued foreseeability and never mentioned any of the other policy considerations, as she did not do the same in her opening brief. And now before this court, plaintiff tries to draw the court's attention away from the important policy considerations that imposing a duty in this case would affect. This isn't a situation, as plaintiff is describing, where yes, there was no emergency happening at the time. Agreed. However, that doesn't mean that it can't happen in the future. That's why it is important to consider the magnitude of the burden and the consequences that would result as a result of imposing a burden here. Oh, excuse me, counsel for interrupting. So when you're talking about the magnitude of the burden, you looked at, or I believe cited the O'Hara versus Holy Cross Hospital case, where the Supreme Court found really that the magnitude of the burden with regard to imposing it on a hospital emergency room was too great. But isn't this case different? And of course, there, they were dealing with someone who wasn't an employee, but a, I've forgotten the term, but in essence, a stranger who was in with the patient who was asked to assist and was injured during that procedure. Isn't this a very different case than that? I mean, why should we look at O'Hara as being informative here? O'Hara is somewhat different, but not in regards to the magnitude of the burden. In that case, the Supreme Court observed that the function of the emergency room is to treat patients and imposing a duty to protect a, I believe the term was non-patient bystander or something like that. The mother of the son who was receiving treatment. To impose a duty upon the hospital, the emergency room there to protect that individual from harm takes away from the purpose to treat the patients. Now, in this case, the operating room, the purpose of the operating room is to perform surgery on a patient. And certainly time is of the essence in an operating room, particularly when a patient is under anesthesia as a patient would be, and was in this case as plaintiff testified. It's important not to keep a patient under anesthesia. And doing the things that plaintiff proposes that Dr. Rossi should have done, which is essentially wait. Wait for plaintiff to finish her task, no matter how long it takes, or he should have just done the task himself, which we know that from Dr. Rossi's testimony is that if he was going to position a monitor himself while he was scrubbed in, which he was in this case, that he then has to find something sterile to be able to use to touch the monitor, or he then needs to re-scrub in. He's got to get sterile gloves, things like that. That is all time that matters. And I think as your honor, Justice Zinoff had mentioned, in that time, emergency could occur. Yes, it didn't happen thankfully this time. However, it is a possibility and that is something that should be considered by this court in determining whether a duty should be imposed. Counsel, just to follow up on that a little bit, shouldn't we care about how like doctors and nurses are working together and what, you know, looking out for each other? Wouldn't that make operations go more smoothly? I mean, isn't this a little bit different than a non-patient bystander? Well, yes, your honor, to both. We should care about the interactions between the surgeon and his assistants, as well as it is different from a non-patient bystander. And in this case, the evidence demonstrates the training of the surgical assistants, surgical nurses, show that where to stand, what to do, where, you know, where to be, things like that. That's, those training, that training is in place for a reason. Now, if the duty that plaintiff is proposing is imposed on Dr. Rossi and on surgeons to wait, you know, do the things himself, that's actually going to change the whole dynamic of operating rooms in general. As the, I believe it was Dr. Rossi testified, he's worked with hundreds of surgical technicians. Those are supplied by the hospital. So it is important that there is uniformity in the training and the way that, you know, doctors and surgical nurses interact. And so, yes, it is very important, but to change that dynamic to change what a doctor has to do when he needs to reposition monitors or directs a surgical nurse to do something would actually change that dynamic. And it would require retraining and things like that, which is another consideration that can, that should be considered under the policy considerations of the duty analysis. Counsel, I'd like to follow up on what Justice Vanzel asked Appellant Counsel about the relationship of these parties. You had just said that they're both employees working at this hospital. And what, how does that give rise to a lawsuit such as this and not being barred because she had a prior workers' compensation case? Yeah, I apologize if I said that both Dr. Rossi and Plenif were employed by the hospital. I must have misspoke. I knew what you meant. So, yes. Okay. So, my understanding is that the workers' compensation claim is the dispute that occurred between her employer and her. And Dr. Rossi is not, and neither is the Peoria Surgical Group. They are not her employer. I don't want to, I don't think that legally they are considered, you know, like contractors, but it is kind of that idea of two subcontractors working together on a project, right? Like an electrician and a plumber working together to build a house. And that gives rise to a cause against one another? No. No, I do not believe that it does. And I believe your Honor had mentioned that there needs to be something more in order to impose a duty. Meaning, yes, sure, a duty of ordinary care as described by counsel in the Simpkins case. Yes, that does exist, a duty of ordinary care, but there does need to be, according to the circumstances, something that, something a little more. And I, the Washington Supreme Court case that we cite, as well as the Schmidt case, talk about that. And in both of those cases, I mentioned there's that general duty that is owed to property, but there needs to be a little bit more to bring the actual duty owed in that particular case, under those particular circumstances, in the scope. The court had determined that there wasn't anything that suggested that the duty should be imposed. And as far as the eggshell skull plaintiff rule, eggshell skull rule, I think counsel conceded it pertains to damages. It doesn't pertain to duty. And in fact, the only case that plaintiff cites is the colonial in case, which actually describes the difference and discusses first duty and then discusses proximate causation. And in the proximate causation analysis, which has a focus on the specific injury that occurred and it's, and it's a fact in, it's in that discussion where the eggshell skull rule is mentioned. It has nothing to do with duty and it was never raised in the trial court. And my time is coming to a close. If I could answer any further questions, I'd be happy to do so. Otherwise I will, I'll just ask the court for the reasons today and set forth in our brief. We respectfully request this court to affirm the trial court and further to deny plaintiff's request for costs and fees given that there was no basis given no legal authority cited. And I thank you for your time. Thank you. Justice Vancell, anything further? Justice Grisho, any other questions? Okay. Mr. Drury, you have time for rebuttal. Thank you, your honor. I think that the illustration about two people, a plumber and electrician that are building a house together is apropos to this case. Each of those individuals has a duty of ordinary care to one another. If they, if one of them injures another one, that's the analysis. They have that Now the question of breach, whether they were acting correctly under the circumstances was not raised by the defense in their motion for summary judgment and not part of the ruling that the court gave. It's a sole consideration of whether there was a duty. And I think that we've heard a couple of times that defense counsel believes that there is that ordinary duty of care, but she's also asking for something a little more and whatever that a little bit more is doesn't take into consideration the nature of the duty of care that individuals have to one another. Excuse me. How does it not? I mean, it does. And then yeah, go ahead. I'm sorry. I think the defense is requesting a reduced duty of care for surgeons or physicians in a hospital setting, which I don't. You're phrasing in terms of reduced duty of care, but aren't we, don't we have to look at the various aspects of elements that make up duty, one of which is the magnitude of the burden. I mean, doesn't this go to magnitude of the burden? It certainly could. But under this circumstance, I have not seen any cases that reflect that one individual, the magnitude of the burden to not injure another on a person to person contact was found to be relieved of a duty in that case. So these are considerations, and I don't disagree with the case law that defense has cited. I just don't think that it stands for the proposition for which they're attempting to employ it, which is to reduce a duty of care between human to human contact. And I think that if there was a case out there in which an individual who through another instrument was found to not have a duty of care to the first, to the defense would have cited that. I have not found it. I think we're arguing that there's not a duty of care, what counsel's arguing. I think everyone here agrees there's an ordinary duty of care, and you have to look at what a reasonable, prudent person would do. But just because something occurred doesn't mean there is a duty and that we have to impose an obligation on that defendant. Don't we need to determine whether the events actually complained of are those in which the doctor or the defendant would reasonably anticipate that something would occur. So in this instance, was it reasonably foreseeable to impose this duty? Was it reasonable that Dr. Rossi would think that by adjusting a monitor, he would injure a nurse? Isn't what you're arguing is an elevated standard of care? Because there is just a general duty. I don't think anyone's disputing that. But to impose an obligation, you have to take the facts of every situation and apply those and see then if that gave rise to a duty and then hence impose an obligation on that. Thank you, your honor. And I agree. I think that there was a duty and I think that it was absolutely foreseeable, especially to someone who is trained as a physician to know or her first grader, really, that if you grab something that someone is holding and pull it back, that can cause injury, which is why we instruct our children to share in school, to take turns, to ask for things when they want them, because everyone can see that we all have a duty to one another and to grab something and move it while someone else is holding it is absolutely reasonably foreseeable to potentially cause an injury, probably cause an injury. Okay, thank you. Thank you, your honor. And I believe, counsel, your time is up. Justice Mansell, any further questions? Justice Grishow? No, thank you. Thank you, counsel, both of you for your arguments this morning. The court will take the matter under advisement and render a decision in due course.